IN THE

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## HARRISBURG—MAY TERM, 1878.

## Bletz *versus* The Columbia National Bank.

1. The state courts have jurisdiction where a borrower in an action of debt seeks to recover back twice the amount of illegal interest received by a national bank, contrary to the provisions of the 30th section of the Act of Congress of June 3d 1864.

2. The form of action is within the jurisdiction of the state court, and the right claimed in this form is private, belonging to the borrower alone. It is, therefore, immaterial whether the source of the right is a state or a federal law. In either case, it is a law binding upon the state, which has given birth to the right.

3. The jurisdiction of the state courts is to be affirmed when it is not excluded by express provision or by incompatibility in its exercise, arising from the nature of the particular case.

May 7th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAX-SON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Lancaster county :* Of May Term 1877. No. 193.

This was an action of debt brought by Frederick S. Bletz against the Columbia National Bank, to recover from it $6678.66, together with interest from December 3d 1873. This amount of $6678.66 was double the amount of interest or discount paid by Bletz to the bank on one hundred and sixty-five notes discounted for him within two years prior to the bringing of this suit, each and every of said discounts being at a higher rate per annum than six per cent. namely at the rate of from seven and a half to twelve per cent. per annum.

This suit was based upon the provisions of the 30th section of

(87)

[Bletz *v.* Columbia National Bank.]

"an act to provide a national currency, secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof approved June 3d 1864." After bringing the suit a declaration was duly filed, plea of payment entered by the defendant, and the case being at issue it was for trial at several terms, and continued for various reasons, when, on the 24th day of January 1876, an additional plea "that this court have no jurisdiction" was entered. To this a replication was filed by the plaintiff, and the court below entered a judgment *pro forma* in favor of the defendant, in order that this court might decide the question of jurisdiction.

Section 30 of the Act of June 3d 1864, reads as follows: "That every association may take, receive, reserve and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at the rate allowed by the laws of the state or territory where the bank is located, and no more, except that where by the laws of any state a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized in any such state under this act. And when no rate is fixed by the laws of the state or territory, the bank may take, receive, reserve or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill or other evidence of debt has to run. And the knowingly taking, receiving, reserving or charging a rate of interest greater than aforesaid shall be held and adjudged a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; Provided, That such action is commenced within two years from the time the usurious transaction occurred. But the purchase, discount or sale of a bona fide bill of exchange, payable at another place than the place of purchase, discount or sale, at not more than the current rate of exchange of sight drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest."

And section 57 reads as follows: "That suits, actions and proceedings, against any association under this act, may be had in any circuit, district or territorial court of the United States, held within the district in which such association may be established; or in any state, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases."

*J. F. Frueauff*, *Samuel Reynolds* and *George M. Kline*, for plaintiff in error.—There is no doubt that the court below has

[Bletz *v.* Columbia National Bank.]

jurisdiction in an action of debt, whether for penalties or otherwise, and the question is, can it entertain jurisdiction in a case where the right of action arises under the laws of the United States? The right of action given by the statute is a private and personal one, which can only be asserted by the party aggrieved. The government or the public is not concerned with it. It is a private right pursued by a private civil action, and the section of the act upon which the action is founded is remedial as well as penal, and is to be liberally construed: Farmers' National Bank *v.* Dearing, 1 Otto 29. Congress may give exclusive jurisdiction to the federal courts, but if an Act of Congress gives a private right, and does not either expressly or by implication give exclusive jurisdiction to the federal courts to enforce it, the state courts having jurisdiction in like causes may enforce such right. It was manifestly the design of Congress that the state courts should take cognisance of actions like the present as well as any other civil actions against banking associations; and that if it had been the design to exclude the state courts in such cases, appropriate terms would have been employed to express such intention, as in other Acts of Congress, when conferring jurisdiction. Without an express provision to the contrary, the state courts will have a concurrent jurisdiction. It is true Congress cannot create a jurisdiction in the state courts, but it does not follow that the state courts, authorized by state laws to try actions of debt, are precluded from trying such actions merely because the right to bring them arises under the laws of Congress: The Federalist, No. 82; Jordan *v.* Downey, 40 Md. 410; Chesapeake Bank *v.* First National Bank, Id. 269; Cook *v.* State National Bank, 52 N. Y. 96; Farmers' and Mechanics' Bank *v.* Dearing, *supra;* Tiffany *v.* National Bank of Missouri, 18 Wallace 412; Cooke *v.* Whipple, 55 N. Y. 150; Stevens *v.* Mechanics' Bank, 101 Mass. 109; Ward *v.* Jenkins, 10 Metc. 583; Buckwalter *v.* United States, 11 S. & R. 193; Ordway *v.* The Central National Bank of Baltimore, 47 Md. 217. But the question is raised whether the court *must* take jurisdiction in a case brought before it. It is urged that while the state courts might take jurisdiction they are not obliged to do it. We contend that where they *may* take jurisdiction, they *must* take it unless prohibited by their own laws; it is not a matter within the discretion of the court. An action which gives a remedy only to a party aggrieved is not to be considered a penal act. State courts have jurisdiction of actions brought by informers against collectors for the charge of the money received under the United States statutes: Lapham *v.* Almy, 13 Allen 301. And the same principle has been held in Morrell *v.* Fuller, 8 Johns. 218; Hitchcock *v.* Munger, 15 N. H. 97; White *v.* Comstock, 6 Vt. 405; Webster *v.* The People, 14 Ills. 365. There is a distinction between an action given by statute to the party aggrieved and an action given to any one who will sue,

the former being remedial and the latter penal : Moore *v.* Jones, 23 Vt. 739. This principle has been sustained in our own courts : Commonwealth *v.* Bennett, 16 S. & R. 243 ; Mevay *v.* Edmiston, 1 Rawle 457 ; Spicer *v.* Rees, 5 Id. 122 ; Commonwealth *v.* Betts, 26 P. F. Smith 465.

*H. M. North*, for defendant in error.—That the exaction of twice the amount of interest which has been received is a penalty seems too clear to be questioned. The Act of Congress in terms declares the interest if unpaid shall be adjudged a forfeiture. The recovery back of twice the amount of interest when it has been paid is still more a penal infliction : Burrell's Law Dictionary, *Penalty ;* Curtis's Com., sect. 247 ; First National Bank of Plymouth *v.* Price, 33 Md. 487. The Supreme Court of the United States, interpreting this section, have declared that an action of this kind under it is brought to recover what is substantially a statutory penalty ; and that therefore the statute must receive a strict construction : Tiffany *v.* National Bank of Missouri, 18 Wall. 410.

The proposition for which we contend is, that the Congress of the United States cannot constitutionally give to state courts jurisdiction over cases of penalties inflicted solely by the laws of the United States. To confer such jurisdiction requires at least the concurrent legislation of the United States and the state : Jackson *v.* Rose, Gen. Court of Va., 9 Niles Reg., sup. 173 ; 2 Va. Cas. 34 ; Commonwealth *v.* Feely, 1 Id. 321 ; United States *v.* Campbell, Tappan, J., in Ohio, 10 Niles Reg. 405 ; Tappan 29 ; State *v.* Rutter (Almeida's case), Balt. Co. Court, 12 Niles Reg. 115, 231 ; United States *v.* Lathrop, 17 Johns. 4 ; Teall *v.* Felton, 1 Comst. 537 (aff'd 12 How. S. C. 284) ; Ely *v.* Peck, 7 Conn. 239 ; Davison *v.* Champlin, 7 Id. 244 ; State *v.* Tuller, 34 Id. 280 ; Haney *v.* Sharp, 1 Dana (Ky.) 442 ; Ward *v.* Jenkins, 10 Metc. 587 ; Martin *v.* Hunter's Less., 1 Wheat. 337 ; Gelston *v.* Hoyt, 3 Id. 312, 328, 334 ; State *v.* McBride, Rice S. C. 400 ; Priggs *v.* Pennsylvania, 16 Pet. 617, 618, 664 ; Sims's Case, 7 Cush. 302, 303, 308 ; Moore *v.* People of Illinois, 14 How. 20, 22 ; 3 Story Const., sect. 1750 ; 1 Kent's Com. 403–404 ; Miss. Tel. Co. *v.* First National Bank, S. C. of Illinois 1875 ; 7 Chicago Leg. News 158 ; and see 8 Id. 293 ; 1 Kent's Com. 403 ; 3 Story's Com. on Constitution, sect. 1750.

It is not in the power of Congress to confer upon a tribunal, which is exclusively of state creation, jurisdiction to try offences against the United States. Notwithstanding the decision in Buckwalter *v.* The United States, 11 S. & R. 193, which was an action for penalties declared to be recoverable as other debts, the doctrine seems a plain one that Congress cannot vest any of the judicial power of the United States in the courts of any other government or sovereignty : Martin *v.* Hunter, 1 Wheat. 304, 330 ; Ely *v.* Peck, 7

[Bletz *v.* Columbia National Bank.]

Conn. 242; Scoville *v.* Canfield, 14 Johns. 338. It is a fundamental principle of the common law that the courts of the state do not take cognisance of any case of penalty or forfeiture, unless such penalty or forfeiture be inflicted by its own statute law: Scoville *v.* Canfield, *supra;* United States *v.* Lathrop, 17 Johns. 9.

Chief Justice AGNEW delivered the opinion of the court, May 20th 1878.

The question before us is, whether a state court has jurisdiction in " an *action of debt*" (in the language of the National Bank Act) " to *recover back* twice the amount of the interest thus paid, from the association taking or receiving the same;" that is to say, when illegal interest is taken contrary to its provisions. The 30th section of the Act of Congress of June 3d 1864, allows national banks to charge and take interest at the rate allowed by the laws of the state where they are located, and no more, and then proceeds: " And the knowingly taking, receiving, reserving or charging a rate of interest greater than aforesaid, shall be held and adjudged a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back in an action of debt twice the amount of the interest thus paid, from the association taking or receiving the same."

Bearing in mind the words of the act, that a right of action, in debt, is given to the debtor and those who represent him only, and not to the government or the public, let us see what reason would prevent the action from being brought in a state court, to recover back money paid to the extent of twice the interest paid. The question is most important to the people who are citizens alike under both state and national governments, for if they are driven into the federal courts, the evil will be a monstrous one. The national banks are intended to do the business of the country in the midst of the people, just as others lending money and discounting paper do, whose places they have filled everywhere. They can sue and be sued in the state courts on all business done by them, secure themselves, and purchase under state laws for the sale of property, and enjoy the advantages of state laws as fully as our own citizens. Therefore, unless the federal jurisdiction is *exclusive* it is clear that even in a doubtful case our decision should be favorable to our own jurisdiction, leaving the doubt to be solved by the federal judiciary; for if our judgment be against it, the citizen has no appeal to the federal courts. If, however, the federal jurisdiction be clearly exclusive, it is our duty so to declare, for the laws of the United States are our laws, and are " the supreme laws of the land, and the judges in every state shall be bound thereby." The relations of the states and the United States are so clearly defined in two

recent decisions, none others need be cited: Farmers' and Mechanics' Bank *v.* Deering, 1 Otto 29 ; Claflin *v.* Hauseman, 3 Id. 130. Justice Swayne says in the former, "that this law is as much a part of the law of each state, and as binding upon its authority and people as its own constitution and laws." In the latter, Justice Bradley, quoting Alexander Hamilton, says : " When in addition to this we consider the state governments and the national government, as they truly are, in the light of kindred systems, and as parts of one whole, the inference seems to be conclusive that the state courts would have concurrent jurisdiction in all cases arising under the laws of the Union where it was not expressly prohibited." The learned justice then shows that the Judiciary Act of September 24th 1789 was framed in this view, giving exclusive jurisdiction to the federal courts in certain cases of national import, and concurrent in certain others of doubtful. A large mass of subjects was thereby left, which necessarily fell into the hands of the state courts having jurisdiction over similar subjects. Thus the rights and wrongs of individuals growing out of the laws of Congress were left to be enforced and redressed concurrently. This line of *civil* remedies for *individuals* is one clearly marked ; but the courts of the United States have gone even beyond it. Thus in Houston *v.* Moore, 5 Wheat. 1, a Pennsylvania case, it was held that the state court had jurisdiction to enforce an Act of Congress upon a delinquent under the act for the organization and training of the militia ; "not (says Justice Bradley) but that these courts might exercise jurisdiction in cases authorized by the laws of the state and not prohibited by the exclusive jurisdiction of the federal courts." So in a suit in a state court against a postmaster for neglect of duty to deliver a newspaper under the postal laws of the United States, the jurisdiction was affirmed : Teal *v.* Felton, 12 Howard 292. And indeed the legislation of Congress for the removal of causes from the state court into the federal, is founded on the admitted jurisdiction of the former.

We may now refer to some of our own decisions and laws. Thus it was held that our courts had jurisdiction of a forgery of a power of attorney to obtain a pension under an Act of Congress : Commonwealth *v.* Shaffer, 4 Dall. 27. In White *v.* Commonwealth, 4 Binn. 418, this court decided that passing a counterfeit note of the Bank of the United States, was indictable under the Act of 22d April 1794, specially including the notes of that bank. Buckwalter *v.* United States, 11 S. & R. 193, was the case of a penalty under an Act of Congress, sued for in the name of the United States. Justice DUNCAN said : " On the matter of jurisdiction, it is sufficient to observe this court has often sustained actions on penal Acts of Congress, where the penalty is recoverable in the state courts, and though convenience is no justification for the usurpation of power, yet as the court does not see how this conflicts with the

[Bletz v. Columbia National Bank.]

Constitution of the United States, the inconvenience may be considered, and it would be an intolerable inconvenience and grievance in an action for a penalty to drag a man from the most remote corner of the state to the seat of the federal judiciary." The remark of Justice STRONG in Huber v. Reily, 3 P. F. Smith 118, was not intended to overrule Buckwalter's case, but to distinguish it, as shown by his own language, that the latter was an action for penalties *declared to be recoverable as other debts;* while he was treating of the disfranchisement of a deserter and the necessity of conviction by a court-martial, before the disability could be enforced. The case of Houston v. Moore has been already cited, where a penalty was inflicted under an Act of Congress by a state court-martial. The legislation of our state has run in the same direction. In 1829, Judge King, Thomas I. Wharton and Judge Shaler, reported the penal act of that year. The Act of 23d April 1829, provided for forging and uttering any gold or silver coin then or thereafter passing or in circulation in this state, and for forging, counterfeiting or uttering a counterfeit note of the Bank of the United States. In 1860, the same great criminal lawyer, Judge King, with Judge Knox and another, was upon a commission to codify the criminal law, and reported the new sections of the Act of 31st March 1860, from 156 to 163 inclusive, punishing offences relating to the coin; and in the report, referred to the laws of the United States and the case of Fox v. Ohio, 5 Howard 410, deciding upon an elaborate argument, that the clauses of the Constitution of the United States relating to the power to coin money and regulate its value, do not prevent the state from enacting a law to punish the offence of passing counterfeit coin of the United States. These laws have remained unquestioned; yet I do not assert that none of the provisions applied to the coin of the United States can be questioned. In view of Fox v. Ohio and other cases, there may be a doubt whether the provisions against making and debasing these coins can be sustained as to the question of jurisdiction. This, however, does not touch the present inquiry, which concerns only the *civil* jurisdiction of the state courts. In our sister states, the power to maintain an action in the name and behalf of the United States for a penalty has been denied. United States v. Lathrop, 17 Johns. 4, a case relied on by the defendant in error, may be taken as an example; but Justice Bradley, in Claflin v. Houseman, *supra*, comments on this case, and remarks that the state courts having declined the jurisdiction does not militate against the weight of the argument, referring, with apparent approbation, to the dissenting opinion of Justice Platt. The result of the discussion, in the language of the learned justice, is to affirm the jurisdiction when it is not excluded by express provision or by incompatibility in its exercise arising from the nature of the particular case.

The question of jurisdiction may be resolved now by an exami-

nation of the precise nature of the case before us.  We have seen that there are two provisions in the thirtieth section of the law. By the first, the taking, receiving or charging a rate of interest greater than is allowed, "shall be held and adjudged a forfeiture of the entire interest." It will be noticed that the word *forfeiture* is used, yet the uniform practice has treated this not as pure penalty, but as a defence which may be set up to the recovery of interest: Lucas *v.* Govt. Nat. Bank, 28 P. F. Smith 231; Overholt *v.* Nat. Bank of Mt. Pleasant, 1 Norris 490. The word *forfeiture* is viewed simply as conferring a *right* which may be asserted by the defendant.

The second clause on which this case rests, is, where "a greater rate of interest *has been paid*, the person paying the same, or his *legal representatives*, may *recover back*, in an action of *debt*, twice the amount of the interest *thus paid*, from the association *taking* or *receiving* the same." Here we find no declaration of a forfeiture as such, but a provision to recover back money paid in an action of debt.  This vests a right in the borrower of reclamation in a common-law form of action, to be brought by himself and in his own right.  It is not a penalty to be adjudged to the United States, or vested in the public, for which any citizen may sue.  The form of action is within the jurisdiction of the state court, and the right claimed in this form is private, belonging to the borrower alone. It is therefore immaterial whether the source of the right is a state or federal law.  In either case it is a law binding on the state, which has given birth to the right.  On this point the language of the court in Claflin *v.* Houseman has marked pertinency.  "Every citizen of a state is a subject of two distinct sovereignties having concurrent jurisdiction in the state—concurrent as to place and person, though distinct as to the subject-matter.  Legal or equitable rights acquired under either system of laws may be enforced in any court of either sovereignty, competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction."  Again, the opinion says there is "no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent and not denied."  Whatever doubts, therefore, have been expressed by some state courts as to penalties to be sued for by the United States, or some one in their behalf, in order to vindicate the federal law, they do not extend to the case before us of a private right sued for by the citizen for himself.  The debtor having paid his debt, with usury, may "recover back" twice the amount of the interest paid, in a state court. It is in this sense it was said in the Farmers' and Mechanics' Nat. Bank *v.* Dearing, 1 Otto 35, that the thirtieth section of the law is *remedial*, and to be liberally construed to affect the object Congress had in view in enacting it.  This view has been taken by the Mary-

[Bletz *v.* Columbia National Bank.]

land Court of Appeals, in the case of Ordway *v.* The Central Nat. Bank of Baltimore, Law Journal, July 27, 1877.   The able opinion of Judge Alvey discusses the subject very fully.

Judgment reversed, and a *venire facias de novo* awarded.